IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Douglas R. Vaughn,                           )<br>        Plaintiff,                                    )<br>                                                          )<br>v.                                                        )<br>                                                          )<br>Deputy Perea, et al.,                          )<br>        Defendants.                              ) | 1:19cv564 (LMB/TCB) |

MEMORANDUM OPINION

This matter is before the Court on a Motion for Summary Judgment ("Motion") [Dkt. No. 81] filed by Loudoun County Sherriff Deputies Justin Denton ("Deputy Denton") and Ronald Perea ("Deputy Perea") (collectively "defendants") in this civil rights suit filed under 42 U.S.C. § 1983 by pro se plaintiff Douglas Vaughn ("plaintiff" or "Vaughn"). Defendants filed their Motion on March 31, 2022, along with a Notice to Pro Se Plaintiff ("Notice") in compliance with Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 83]. The Notice informed plaintiff that he was entitled to file a response to the Motion, consisting of affidavits and sworn statements contesting defendants' statement of facts and a legal brief; that his opposition was due within 21 days of the date of the Motion; and that if he did not respond to the Motion, the Court could make its decision solely on the basis of defendants' papers. Id. The defendants served the Motion, a memorandum in support of the Motion, and the Notice on plaintiff at the address on file with the Court.[1]

---

[1] There is no evidence in the record that plaintiff did not receive defendants' Motion and Notice. Moreover, since May 24, 2019, plaintiff has known that his Complaint could be dismissed if he failed to immediately notify the Court of any change of address. [Dkt. No. 4]. He demonstrated his knowledge and understanding of this requirement on November 15, 2021, when he filed a change of address notice. [Dkt. No. 67]. Defendants have sent all of their pleadings to the address provided by plaintiff in that notice. See, e.g., [Dkt. Nos. 81] at 2 and [Dkt. No. 83] at 2.

Plaintiff has neither filed an opposition to the Motion nor requested additional time to do so. Accordingly, the facts established by the defendants in the Motion are deemed to be admitted.[2] As explained below, the undisputed material facts establish that summary judgment be entered in defendants' favor.

## I. Procedural History

Plaintiff filed his Complaint in May 2019, and named two defendants—Deputy Denton and an individual whom the Complaint identified as "Deputy Pidea." [Dkt. No. 1] at 1-2. The Complaint alleged that defendants (1) used excessive force while arresting plaintiff and (2) took plaintiff into custody pursuant to a warrant that had previously been executed. [Dkt. No. 1]. Plaintiff seeks $596,800 in damages. On May 24, 2019, the Court screened the Complaint and concluded that it warranted a response from the defendants. [Dkt. No. 4]. Accordingly, the Court directed that a waiver of service of summons form be sent to each defendant. [Dkt. No. 30]. On March 27, 2020, Deputy Denton waived service. [Dkt. No. 36]. The waiver form that was mailed to "Deputy Pidea" was returned to the courthouse as undeliverable. [Dkt. No. 32].

On April 27, 2020, Deputy Denton filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). [Dkt. No. 38]. Plaintiff filed an opposition to the motion to dismiss, and the motion to dismiss was granted on September 3, 2020. The excessive force claim was dismissed as to

---

[2] When a plaintiff fails to respond to a motion for summary judgment, the motion can be decided solely on the basis of the defendant's submissions. See Fed. R. Civ. P. 56(c)(3) (in deciding motion for summary judgment, "[t]he court need consider only the cited materials."); Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Plaintiff's status as a pro se litigant does not entitle him to lenience in this respect. See, e.g., Thompson v. Wiedemann, No. 3:16cv834-HEH, 2018 WL 1568681, at *3 (E.D. Va. Mar. 30, 2018) (stating in context of pro se prisoner-initiated suit that a plaintiff's "failure to respond to the Motion for Summary Judgment permits the Court to rely solely on the submissions of Defendants in deciding [the motion]").

2

Deputy Denton, and the plaintiff's claim regarding the legitimacy of the arrest warrant was dismissed as to both defendants. [Dkt. No. 46]. In addition, the Court directed the United States Marshals Service to serve the Summons and Complaint on "Deputy Pidea"; however, service was unsuccessful because the Loudoun County Sheriff's Office had no record of an employee named "Pidea." [Dkt. No. 50]. As a result, the claims against "Pidea" were dismissed pursuant to Fed. R. Civ. P. 4(m) and, because "Pidea" was the sole remaining defendant, the civil action was dismissed without prejudice. [Dkt. No. 51].

On October 16, 2020, plaintiff noticed an appeal and stated in his notice that the defendant's last name is actually "Perea," not "Pidea." [Dkt. No. 52]. On appeal, the Fourth Circuit vacated the decision to dismiss the claims against Deputy Perea. [Dkt. No. 68]. With regard to the claims against Deputy Denton, the Fourth Circuit affirmed the dismissal of the arrest warrant claim and reversed the Court's finding that the complaint failed to state a claim regarding defendants' use of allegedly excessive force. Id. As a result, the only issue before the Court—and the only issue addressed in defendants' Motion—is whether defendants violated plaintiff's Fourth Amendment right to be free from the use of excessive force during his arrest.

## II. Undisputed Facts

In support of their Motion, defendants have submitted an affidavit by Deputy Perea with documents related to plaintiff's arrest [Dkt. No. 82-1] ("Perea Aff.") and video footage taken from Deputy Denton's body camera [Dkt. No. 82-1] at 22 ("[Bodycam Footage at xx:xx]"). Plaintiff did not file any opposition to the Motion, and the Complaint is not sworn. Accordingly, the following undisputed facts are derived solely from defendants' submissions, including the video recording from Deputy Denton's body camera.

At all times relevant to this action, Deputies Denton and Perea were employed by the Loudoun County Sheriff's Office. Perea Aff. ¶ 3. On November 11, 2018, defendants responded to 41 Bentley Drive, Sterling, VA 20165 at approximately 7:00 p.m. "to execute an arrest warrant for Vaughn based on two outstanding warrants." Id. at ¶¶ 9-10. Deputy Denton wore a body camera which recorded the entire interaction. Id. at ¶ 12.

Deputy Denton knocked on plaintiff's door upon arriving at the house. Id. at ¶ 14; [Bodycam Footage at 01:30]. Plaintiff's mother answered the door, allowed defendants inside, and led them upstairs to plaintiff's room. [Bodycam Footage at 01:46 – 02:12]. Plaintiff's mother then knocked on plaintiff's bedroom door and stated, "Doug, the Loudoun County cops are here." Id. at 02:15 – 02:17. Almost two minutes passed before plaintiff opened his door. Id. at 03:56. Deputy Denton then entered plaintiff's room and stated, "I got some paperwork for you, okay? I don't really know what's going on with you and your history, okay, but apparently you missed a court date." Id. at 04:05 – 04:15. Plaintiff denied that he had missed a court date and Deputy Denton responded, "Okay, well whatever it is, I need you to put your socks and shoes on for me, okay? We're gonna be taking a trip up to Leesburg." Id. at 04:17 – 04:23. Plaintiff and his mother then discussed plaintiff's health, specifically mentioning that plaintiff has diabetes and would require insulin. Plaintiff and his mother also argued over whether plaintiff had done anything to justify his arrest. Id. at 04:35 – 07:40. Throughout their conversation, plaintiff expressed significant frustration and swore repeatedly. Id. All the while, Deputy Denton asked plaintiff to put his shoes on five additional times. Id. at 04:38; 05:05; 05:44; 06:13; 06:54.

Plaintiff continued to argue with defendants and his mother as he walked downstairs to his living room. Id. at 07:43 – 08:05. Plaintiff then briefly sat on his couch next to his mother

4

before rising to his feet and walking towards Deputy Denton. Id. at 08:42 – 08:51. Deputy Denton stopped plaintiff, told him to "Go ahead and turn around for me and put your hands behind your back," and began to handcuff plaintiff. Id. at 08:51 – 08:53; Perea Aff. ¶ 22. Plaintiff repeatedly yelled, "Hold on hold on hold on hold on" and possibly "my shoulder," although the audio of that moment is not clear. [Bodycam Footage at 08:53 – 08:56]. Plaintiff and Deputy Denton then fell forward onto the couch and the lens of the body camera is briefly obscured. Id. at 08:57; Perea Aff. ¶ 24.



*Screenshot of Bodycam Footage at 08:56*

Because Deputy Denton's body camera was blocked when he and plaintiff fell, there is no video footage for roughly four seconds; however, plaintiff can be heard yelling "I'm not

resisting," while defendants repeatedly say "stop." [Bodycam Footage at 08:58-09:03]. Defendants then handcuffed plaintiff as plaintiff complained of pain in his shoulder and told his mother to "call that fucking—that uhm good lawyer." Id. at 09:22-09:36.



*Screenshot of Bodycam Footage at 09:07*

After handcuffing plaintiff, one of the defendants told plaintiff to stand up. Id. at 09:36. Plaintiff then said, "I'm dead serious, look at the medical—my fucking shoulder, dude." Id. at 09:43. Defendants then led plaintiff out of the front door of the house in the direction of their patrol cars. Id. at 09:40 – 11:10.



*Screenshot of Bodycam Footage at 09:52*

Throughout the roughly one-and-a-half minutes it took for the parties to arrive at defendants' vehicles, plaintiff repeatedly mentioned his injured shoulder, at one point calling it a "serious injury." Id. Upon arriving at the patrol cars, Deputy Perea helped plaintiff into the back of his patrol car. Id. at 12:30 – 12:39. Deputy Perea fastened plaintiff's seatbelt and then drove to the Loudoun County Adult Detention Center. Perea Aff. ¶ 32. Deputy Denton had lost his flashlight while securing plaintiff in handcuffs and returned to plaintiff's house to retrieve it. [Bodycam Footage at 13:10 – 14:21]. After finding his flashlight and briefly speaking with plaintiff's mother, Deputy Denton left the scene. Id. at 14:22 – 17:52.

### III. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### IV. Analysis

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). The evaluation of an excessive force claim therefore requires an assessment of the objective reasonableness of the defendant officers' use of force against a plaintiff. In making such an evaluation, a reviewing court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Here, the record shows that plaintiff was arrested for his failure to appear at a hearing in the Loudoun County General District Court. [Dkt. No. 82-1] at 21. Although "it is important

that courts have the authority and power to compel compliance with [] orders," failure to appear is a "relatively minor" crime. Elder v. Thompson, No. 4:13-cv-47, 2014 WL 1607381, at *8 (W.D. Va. Apr. 22, 2014) (discussing severity of crimes in context of Fourth Amendment excessive force analysis). With respect to the second Graham factor, it does not appear that plaintiff posed a risk to the safety of the defendants or plaintiff's mother during his arrest; defendants outnumbered plaintiff, and there is no evidence that plaintiff was a violent individual. As to the final Graham factor, the evidence shows that plaintiff actively resisted arrest. Defendants offer uncontested assertions that plaintiff "began to move away from [them]" as they started to handcuff him and "kept stiffening his arms and pulling them away" while they restrained him on the couch. Perea Aff. ¶¶ 23, 27. In addition, plaintiff's continuous verbal protests can be heard throughout the audio recording of the arrest.

Considering the three factors set forth in Graham, it is clear that defendants acted objectively reasonably under the circumstances. As an initial matter, the record establishes that defendants' arrest of plaintiff was supported by a legitimate warrant, [Dkt. No. 82-1] at 21, and "the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest." Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002). In addition, despite complaining about his shoulder during the arrest, there is no evidence that plaintiff suffered any injury as a result of defendants' actions. During his appearance before a magistrate shortly after his arrest, plaintiff complained about his blood sugar level, and he was examined by a nurse at the jail. [Dkt. No. 82-1] at ¶¶ 36 & 37. There is no evidence that he informed the magistrate or the nurse that he suffered any injuries to his shoulder during the arrest.

Other courts have considered allegations of greater force than what occurred here and have held that the use of force was reasonable. For example, in Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002), the Eleventh Circuit found that a police officer did not violate a plaintiff's Fourth Amendment right to be free from the use of excessive force when the officer allegedly "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the police officer] was hurting him." Id. at 1351. That plaintiff, who had a preexisting shoulder injury for which he had undergone a recent surgery, ultimately had to have his arm amputated due to the damage the defendant inflicted while handcuffing him. Id. Nevertheless, because there was no evidence that the police officer had knowledge of plaintiff's medical history, the Eleventh Circuit concluded that he had acted reasonably. Id. at 1352. Summarizing its rationale, the appeals court wrote:

> We do not use hindsight to judge the acts of police officers; we look at what they knew (or reasonably should have known) at the time of the act. What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time . . . . Under the circumstances of this case, Sgt. Farrell's acts cannot rise to the level of a constitutional violation.

Id. at 1352-53.

The force used by Deputies Denton and Perea was far less severe than the force used by the defendant in Rodriguez. In this action, contrary to what is alleged in the complaint, the evidence shows that defendants used only the force required to place handcuffs on plaintiff. Moreover, there is no evidence that either defendant had any knowledge of plaintiff's pre-existing shoulder injury until after they began to handcuff him. Accordingly, defendants are entitled to judgment in their favor, because merely "[p]ulling on a shoulder or grabbing an individual incident to placing that individual in handcuffs is not excessive force." Jensen v. Phillips, No. WMN-16-1175, 2017 WL 121772, at *4 (D. Md. Jan. 12, 2017); see also Brissett v.

Paul, 141 F.3d 1157 (4th Cir.1998) (table) (concluding, as matter of law, that painful handcuffing with minimal injury does not amount to a constitutional violation).

## IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted through an Order that will accompany this Memorandum Opinion.

Entered this 20 day of May 2022.

Alexandria, Virginia

/s/ 

Leonie M. Brinkema
United States District Judge